Good morning, Your Honors. May it please the Court, my name is Angela Bortel. I'm representing Petitioner Ludmila Krotova and her daughters Anastasia and Alexandra in this matter. This case involves a lifelong history of not only sustaining Jewish epithets and anti-Jewish slurs throughout her life by economic disenfranchisement, official exclusion, and physical attacks based on the fact that Petitioner is Jewish. This case comes to you from an appeal of a BIA decision based on a terse, error-ridden decision by Immigration Judge Anna Ho in which she specifically admonished Petitioner from addressing certain aspects of her story and then in her testimony. Even on the incident record, however, Petitioner has demonstrated that she's eligible for asylum. Today I would like to address why the BIA erred in finding that the incidents that Ms. Krotova personally experienced, as well as her family, why the BIA erred in finding that those incidents did not rise to persecution. I would also like to address the issue of why the experiences and the voluminous objective evidence in the record compels a finding that she has a well-founded fear. And I would also like to address a few points of why this case is not appropriate for remand. MS. KROTOVA That's what I was going to ask you about. Because as I understand, Ventura, the BIA did not reach the issue of future persecution at all. MS. KROTOVA Right. MS. KROTOVA And so as I understand, Ventura, if we were to agree with you that the evidence cumulatively compels a conclusion of past persecution, it would be then up to the agency to look at the issue of future persecution with the presumption in her favor. What's wrong with that? MS. KROTOVA Regarding the future persecution issue, yes, I would agree with the Court on the remand. The government has asked for remand on other issues which are inappropriate for remand simply because of the credibility issue and the issue of the law. MS. KROTOVA You mean the credibility question. Sure. They had the opportunity to look at that, I assume, is your argument. That was one of the bases of the BIA's decision and the BIA chose not to adopt that reason. MS. KROTOVA Exactly. That was exactly the point I wanted to make, that those bases are simply inappropriate. Those matters were before the BIA. They passed and only made their finding that these incidents did not rise to past persecution. So we would ask that the Court not remand on those grounds because the BIA already passed on them. To remand would simply eviscerate the whole idea of de novo review for the BIA. So, yes, thank you. If I may address some points of what Petitioner experienced equals past persecution, she experienced, as I said, racial epithets, scapegoating, economic disenfranchisement, unequal treatment and three attacks on her person, not to mention the attacks on her brother and the anti-Semitic incidents her sister has experienced. Indeed, it's difficult to conceive of a more quintessentially anti-Semitic moment than when Skidhead stormed the makeshift synagogue that she and a few other Jewish, faithful Jewish members had gathered and redone with their own hands. The police did nothing and told them it was simply their problem to fix it. The government can't meaningfully distinguish Korablina or a matter of O.Z. and I.Z. from this case. Side by side, they're in fact very similar. In Korablina, both, as in Korablina, Petitioner also had a Jewish mother. Petitioner was also forced to attend a less prestigious technical school because she would not have been admitted to an institute based on being Jewish. She had problems in her employment, lower salary. In the case of Petitioner, even sexual harassment in the workplace. In Korablina and Petitioner's case, nationalists came to their homes, vandalizing them, leaving stars of David, making very clear that this was not a random incident. In both cases, family members continued to have problems after their departure. Perhaps more forcefully, Petitioner has experienced two physical attacks and one attempted physical attack on her person, whereas Korablina only experienced one, albeit very heinous, attack on her person. And even more forcefully than Korablina, Ms. Krotova actually reported three incidents to the police and received no response, whereas Korablina, she'd only reported one of her incidents and failed to report any of the subsequent problems she had because she believed the police would simply not respond. Similarly, in the matter of Ozy and Izy, both Petitioners experienced three attacks, or in the case of Petitioner, two attacks and an attempted attack at the synagogue. In Ozy, the Petitioner's son had problems at school. Korab, Krotova herself had problems in school, and her daughter was also implicated in the December 93 attack with the skinheads outside their home. In both cases, apartments were vandalized. In both cases, police took no action after reports. And I just, I think it's impossible to meaningfully distinguish these cases. The government, the best the government has done is to cite cases from the 6th, 8th, and 11th Circuit, which as we know are not controlling on this Court. The only 9th Circuit cases the Court has, excuse me, the government has cited are Nagulka and Halaim, in which both of those cases there were no physical attacks on the Petitioners. In Nagulka, which was the case of a Ukrainian, also Ukrainian, excuse me, Pentecostal Christian, the Court found that there was no persecution because there were no physical attacks and because the Petitioner was not prevented from practicing religion without any recourse to the police, I don't know what would be, what would satisfy that requirement. Similarly, in Halaim, there were no physical attacks, and this Court found that the Petitioners lived relatively unmolested for 50 years in Ukraine, even though they were Pentecostal Christians. Here, Petitioners had lifelong problems, and similarly, those problems were escalating up to the moment she left. So compared with these cases where the Court has not found persecution, Petitioner's case stands very strong. I would like to reserve two minutes for rebuttal. Do you have any questions? I have three. Oh. I thought you'd ask more questions. I'll reserve three minutes for rebuttal. There's no requirement to fill up all the time. I'll reserve three. May it please the Court. Jennifer Keeney for the government. First of all, I'd like to address the question I think that you had put to Petitioner's counsel regarding the Board's decision in this case. Our position wasn't that the Board decision only referenced past persecution solely. I think that the Board did agree with the immigration judge's determination as to past persecution or a well-founded fear of future persecution. Therefore, the only issue here is not simply the past persecution, but also whether if she failed to show that the events rose to past persecution, whether she has a continuing or future persecution of well-founded fear in the future. The record evidence of the board's decision in this case. Could you point me to where you think the BIA says that? Sure. It's on page 2 of the record. Right. It's very short. Yes, it is. We agree with the immigration judge that the Respondents failed to demonstrate either past persecution or well-founded fear of future persecution on account of any of the five enumerated grounds. Do you think that they were applying the presumption in favor of the Petitioner's in looking at the well-founded fear question, which would be true if past persecution had been demonstrated? No, they did not apply a presumption in this case because the immigration judge did not find that the events described by Petitioner rose to the level. So if we disagree with that, if we were to hold that there was past persecution, wouldn't we have to remand for reconsideration of future persecution, giving the Petitioners the benefit of the presumption? That would be correct, Your Honor. But in this particular case, the agency properly found, and substantial evidence supports, that the incidences that Petitioner described in her testimony did not rise to the level of persecution. Petitioner testified specifically regarding discrimination regarding daycare, discrimination in work and in home experiences. But she was surrounded by skinheads and smacked around twice, and a friend of hers who was Jewish was killed, and her brother was beaten up requiring surgery, et cetera. Wasn't there an awful lot more here than just unhappy discrimination? Well, the incidences that she testified to that happened to her when she lived in Russia were the two incidences. One was being surrounded. The other one was insults and a slap by friends of a neighbor. Incidences that she testified to that occurred since she left, that would be her brother, a family friend being murdered. Petitioner has to show that those incidences are closely tied to her, and she hasn't shown that. What about, maybe I'm confusing this because we had several Russian cases here, but was there a desecration issue? Desecration of a synagogue? She testified that, yes, when she was living in Russia, and she was in services, that people came in and caused destruction to the synagogue. Why wouldn't that be an instance of real persecution? In a place of worship, someone coming in hostile to it? Well, again, in Petitioner's case, she was not harmed during that incident, although it shows that there was anti-Semitic and discrimination and harassment. It doesn't rise to the level of persecution. But what if all this happened in Nazi Germany about 1937? What would you say then? Well, this record is, I would say that this record... The same things were going on then. The record doesn't... What would you say that was, not persecution? Well, no, I wouldn't say that, Your Honor. I would say that the record in this case is distinguishable... Synagogues beat people up. ...where she's there at the time. Even if she's not physically hit, isn't there harm to her from that type of an incident? Yes, and the immigration judge did take into consideration all of the incidences that Petitioner testified to and taken... Yes, except that when the BIA made its decision, it seems to think there are only some slurs It doesn't occur that the BIA considered this. It mentions episodes of verbal insults and slurs and attempted attack consisting of a slap in the face. I mean, they do say including, but it doesn't appear that the BIA itself has really taken account of the context in which those things occurred. Well, there's a presumption of regularity that the Board reviewed the entire record by merely not stating every incident that Petitioner testified to does not demonstrate that they did not consider Petitioner's testimony as a whole. So it's more important to put down a little slur than the burning of a synagogue, huh? I'm sorry, Your Honor? It's more important to put down something about a little slur than not put down the burning of a synagogue. I don't understand that. Well, again, Your Honor, the Board, there's a presumption of regularity that the Board is considering everything in the record, reviewed the entire record, and issued its decision based on that fact. Well, the presumption I draw out of that is that there must have been a sleep somewhere. Although this Court... Put that down. This Court might find that it would draw different inferences than the agency did and might support a finding that it was past persecution. The record does not compel a conclusion that the incidences that Petitioner suffered in the past rise to the level of persecution. Furthermore, Petitioner in this case, because the record does not support that there has been significant change to the worst in the future, because she failed to show or the experiences in her past did not rise to the level of persecution, the record does not support that she has a well-founded fear of future persecution. She didn't get a presumption as to the future, though, right? That's correct, Your Honor. Okay. What... The incident... There was an incident with her children, wasn't there? There was an incident where she described taking her child home at night and being surrounded by a group of people and she was kicked. Her child ran away. Okay. All right. To sum up, the petition for review in this case should be denied because the record evidence does not compel a conclusion that Petitioner suffered past persecution or faces a future persecution, a well-founded fear of future persecution on account of protected ground. Thank you. Well, who has to be compelled? The record is not compelled. The record has... It has to be that no reasonable fact-finder could find otherwise. No reasonable fact-finder. Okay. The incident with the children where she was struck or hit or whatever and the child ran away, is it clear that that was religious motivation for that incident? The immigration judge didn't question whether these incidences occurred on account of her... It was an anti-Semitic comment shouted at her during the... That was her testimony at the time of that incident that it was based on her religion, right? That's correct, Your Honor. Any further questions? You have your heart and soul in these cases. Thank you. May it please the Court, I'd like to use my rebuttal time. Thank you. To kind of recapture a little bit of what happened, the December 93 attack happened when Petitioner was taking her daughter home from school and, excuse my language, a group of people surrounded her and basically said, Kite, get out of here. I can't believe you're still here. They tried to assault her, pulled at her clothes, it escalated, they started pushing her around and kicked her very hard. She had a huge bruise and suffered from nightmares after this. And again, the police took no action after her report. And in the winter-spring 94 incident, this was again in front of her house, the assailants were dressed in black as is typical for neo-nationalist skinheads in Russia and in other countries. They surrounded her and said, So, Kite, you're still here. The whole entrance is stinking with your kite smell. And it wasn't a slap. She pushed her and she was struck in the face and her lip split open. And again, the police took no action. And with regards to the synagogue, it wasn't just the one incident by the skinheads but there had been previous desecration, vandalism of that makeshift synagogue again because there weren't any other synagogues. I would also like to address the government's completely unsupported assertion since we're discussing well-founded fear of future persecution that the record does not show the anti-Semitism is indeed rising in Russia. We submitted... But you agree... The government's conceded that if we find past persecution that a remand would be required under Ventura to assess future persecution with a presumption. Okay, Your Honor. Thank you. And... In conclusion, I would just like to say that all of these instances when compared with the case law of this court do rise to persecution and indeed that conclusion is compelled. Thank you for your time. I think I'm going to comment that I think the case is very well argued by both parties and I recognize this one might be a tough case for the government to argue but it's entitled to a zealous argument as is the petitioner. Submit that one? Yeah, we'll submit it. Thank you. Good morning, Your Honors. May it please the Court. My name is Vicki Dobrin and I represent the petitioner Sergei Zolotukhin.
judges: Pregerson, Graber, Gould